## No. 13,116.

DeVINNA ET AL. *v.* SOUTHERN COLORADO BANK OF PUEBLO.

(40 P. [2d] 966)

Decided January 28, 1935.

Mr. ROBERT R. TARBELL, for plaintiffs in error.

No appearance for defendant in error.

*In Department.*

MR. JUSTICE YOUNG delivered the opinion of the court.

PLAINTIFFS in error were defendants, and defendant in

error was plaintiff, below, and they will be so designated in this opinion.

This is an action to set aside an alleged fraudulent conveyance by defendant DeVinna to his daughter, Cora E. Underhill. At the close of plaintiff's evidence, defendants each moved for a nonsuit, which motion was denied by the trial court and the defendants electing to stand thereon, judgment was entered setting aside the conveyance and subjecting the land to sale to satisfy the plaintiff's judgment. The defendants bring the case here, assigning a number of errors, all of which may be considered under the general proposition that the evidence was not sufficient to entitle the plaintiff to any relief against defendants.

The facts shown by the record are as follows: Defendant, J. F. DeVinna, by deed dated August 30, 1924, recorded October 21, 1925, conveyed a hotel property in Moffat, Colorado, to his daughter and codefendant Cora E. Underhill, the consideration therefor being love and affection. DeVinna continued to the time of this suit to occupy and operate the hotel as before, but whether for himself or under lease does not appear from the record. The record does not disclose that he owed any debts or contemplated contracting any at the time of the conveyance. DeVinna was treasurer of the Bank of Moffat on March 24, 1926, and S. J. Weaver was the cashier of that bank. On that date, at the request of the state bank commissioner, DeVinna made a credit statement directed to the Moffat bank, which listed DeVinna's liabilities in notes payable, but not to the bank, as $500 and his assets as $10,900, including the hotel property at $7,000 value, another piece of land at $2,800 value, and some personal property. Weaver did the clerical work of making up the credit report and Weaver and DeVinna together appraised the value of the parcels of real property. Weaver and DeVinna were intimately associated in a business way and Weaver knew that DeVinna had deeded the property to his daughter and understood at the time of the

conveyance it was to be effective and did not know whether the daughter had ever deeded it back to her father; Weaver certified on the credit statement that DeVinna "has never borrowed any money the past five years. He is first class."

On November 11, 1927, DeVinna executed a promissory note to S. J. Weaver. Weaver endorsed the note and sent it to the Southern Colorado Bank of Pueblo, the plaintiff, with a copy of DeVinna's statement to the Bank of Moffat made March 24, 1926. The plaintiff bank later sued DeVinna on the note and obtained judgment, which it was unable to satisfy. After this judgment, one Mc-Govern, an agent of the plaintiff bank, had a conversation with DeVinna in which DeVinna stated that when he made the conveyance to his daughter he had been to see his son whose wife was spending more money than he thought proper and he had given his son some advice that he thought might displease his daughter-in-law and that there was a possibility she might sue him. This is the only evidence of any contemplated obligations or debts of DeVinna at the time of the conveyance. It is charged in the complaint that he had many debts at the time of the conveyance; that the conveyance was made in contemplation of contracting future debts and to defraud creditors present and prospective, and particularly the plaintiff. Defendants denied this charge. It was alleged that defendant Underhill held the property in trust for her father, which defendants denied.

It will be observed from the foregoing statement of facts that DeVinna had no debts at the time the conveyance was made, and that the record is silent as to any contemplated future obligations of DeVinna's creation. "The existence of the debt at the time of the conveyance must be alleged or that the transfer was made with a view to the creation of future debts." Bancroft's Code Pleading, Vol. 3, p. 2398. To the same effect is *Emery v. Yount,* 7 Colo. 107, 1 Pac. 686.

The statement shows that DeVinna, at the time he

made the conveyance, had sufficient other property to pay the debt represented by the note on which plaintiff secured judgment. "It must appear from the complaint that at the time of the transfer the debtor did not have sufficient other property, subject to execution, to pay his debts." Bancroft's Code Pleading, Vol. 3, p. 2398.

The credit statement was given by DeVinna to the Moffat bank at the request of the commissioner and, as it states on its face, to give him credit standing with the Bank of Moffat. The note was given by him to Weaver personally, who knew of the conveyance or at least knew of facts that would have put a reasonably prudent man on inquiry. The statement was made nearly two years before the note was executed, which in itself was a circumstance that should have put the plaintiff bank on inquiry as to any changed condition. Even a casual investigation would have disclosed the conveyance which was on record. There is nothing to show that DeVinna knew of the transfer of the note to the plaintiff bank by Weaver or that Weaver had furnished a copy of the statement to the plaintiff bank. There is no showing of any concert of action between Weaver and DeVinna or defendant Underhill in procuring the plaintiff bank to take the note. To permit this judgment to stand would be to say in effect that a false statement made to one person (the Moffat bank), prior to the creation of the debt in question and with no relation to it, repeated to a third person (the plaintiff bank), by one (Weaver) who had knowledge of its falsity, or of facts that would put any reasonable man on inquiry as to its truth or falsity, is a false representation to the third person for which the maker of the statement may be held in an action for fraud against him. This is not the law in this state. The motion for a nonsuit should have been sustained.

The judgment is reversed and the cause is remanded with directions to enter judgment for defendants.

MR. JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE BOUCK concur.